Case No. 25-5952, Melissa Black et al. v. IEC Group, Inc., doing business as AmeriBEN. And you thought you were done with torts. Good morning, and may it please the Court. My name is Jeff Blake, and I'm here on behalf of the appellants Miles and Melissa Black. I'd like to reserve five minutes for rebuttal. Article 3 of the U.S. Constitution requires at the that the plaintiff plead facts that plausibly state an injury in fact, that is particular to the plaintiff, and that is concrete as opposed to abstract. On the facial challenge to standing, the defendant's unsupported assertions and statements designed to deflect blame and avoid regulatory scrutiny do not supersede the facts in the complaint, especially in a case like this one, where the defendant has access to all the facts, and the plaintiff only knows what the defendant is going to tell the plaintiff. Plaintiffs in this case allege three distinct injuries, one intangible and two tangible. The first, the intangible injury, is the breach of confidence, and that was occasioned by the disclosure of plaintiff's private facts. The two tangible injuries are the time, effort, and expenses that the plaintiffs underwent in assessing the risk of identity theft and taking precautions to reduce that risk. The third injury is the lost benefit of the bargain in paying money to AmeriBand for data security that was not delivered. Turning first to the issue of the injury of breach of confidence, that occurred when AmeriBand disclosed plaintiff's treatment-specific health-related information without authorization and without lawful purpose. This harm is twofold. It consists of the mental and emotional distress plaintiffs experienced upon learning that their sensitive health data was disclosed, and it was disclosed to unknown recipients by their health plan administrator. Second part of this is the erosion in the trust that the plaintiffs must place in treatment providers in the course of obtaining treatment going forward. By unlawfully disclosing plaintiff-sensitive information, AmeriBand injected doubt that the intimate details that the plaintiffs provide to their treatment providers will remain in confidence. Counsel, can you articulate the sensitive nature of the disclosed information? What was sensitive about it? The information that there's an open question, and the parties are in dispute currently as to what exactly the scope and the nature of the information that was disclosed in the data breach. There's the data breach notification letter, which highlights specific items of personal information, and those include treatment provider identity, amounts owed and billed, and tracking numbers and claim numbers in connection with the plaintiff's names. Are you alleging that social security numbers were disclosed? Was that in your complaint? We are alleging that it's an open question as to whether social security numbers are exposed in this data breach. Certainly, the plaintiffs entrusted AmeriBand with social security numbers, with a vast amount of their financial account information, their health-related information, in providing the professional services that the defendants were supposed to provide them. Have you done any discovery that would allow you to determine that? We have not done any discovery. So, this was dismissed before any discovery was allowed? It was dismissed. It was dismissed on a motion to dismiss on a factual finding that what the defendant disclosed in this letter with the qualifier, the personal information that was exposed included these specific items of information. So, there may or may not have been more? You don't know? There may or may have been more. Maybe the defendant doesn't know yet, but what's required at this point is discovery to obtain the risk assessment that the defendants conducted and to identify what potential other information may have been exposed in the data breach. If I can cut to the chase, for me, the question is how do you get out from under transunion? I don't think transunion poses a barrier. Okay, well, that's my question. Why does it not pose a barrier to you? Transunion recognized two distinct independent injuries that the plaintiffs in this case are going under. The first is the close relationship to a harm traditionally recognized in American courts, and that's the idea that the plaintiffs had their private facts disclosed without their authorization. That injury in and of itself, without looking to second order consequences, constitutes an injury that provides a remedy in court. The other aspect of this is the credible threat that the plaintiffs were under, receiving the data breach notification letter, in their shoes, seeing a letter from their plan administrator saying, your health information, including specific pieces of information that are treatment-specific, health-related information, was exposed to one or more individuals in an unsecured email. And the data breach notification letter also advised the plaintiffs, check your explanations of benefits, review your health records, and contact us if you see anything that doesn't look right on these records. The disclosure here was not to the general public, correct? The disclosure was individual letters that were sent to the plaintiffs by mail. And how do you satisfy the requirement that dissemination be substantially certain to become one of public knowledge? That's restatement. The 60652D. There's a, we're looking at a different analog in the common law.  We're looking at not necessarily publicizing the information. We're looking at the breach of confidence. There's a confidential relationship between the parties, and it was the mere disclosure itself. It was the release of the records to anybody outside of the realm of confidentiality that caused the injury. I understand that you haven't conducted discovery in this case, but could someone that this information was disclosed to be able to determine, for example, that my child was undergoing gender treatment? Without knowing what is in the file and the extent of that information, it's hard to say. I can think certainly that those kinds of inferences could be drawn with the information that we know that AmeriBed concedes. Or that my daughter or granddaughter was using birth control. Certainly, identifying a provider name, identifying amounts billed, some of those inferences can be deduced if the individual who receives the file knows something about the individual and knows a little something about the provider and what kinds of treatment they provide. Counsel, so you rely on the breach of confidence tort? The breach of confidence and the disclosure of private information. I guess going back to Judge Hawkins' question, then, doesn't that latter tort require public dissemination and not just to one or two members? It doesn't require public dissemination because the injury is in the release itself to somebody who's outside of the confidence. And there are cases that recognize that a patient and a physician have a confidentiality relationship. That goes to the breach of confidence tort, though. That's right. We're sliding into whether or not we've stated whether or not the plaintiff has stated a cause of action. The issue here is not that. The issue here is sufficient injury for purposes of Article III. That is to say, there may be Article III injury, but without a cause of action. So, I mean, in a sense, I don't care what the cause of actions are. I'm after is there sufficient injury that could be recognized by a cause of action? That's the question in front of us as I see it. That's correct. I agree with that, Your Honor. The elements of the cause of action, only to the extent they line up with the what the nature of the injury is and what the nature of the harm is to the plaintiff. If I understand the case correctly, as it's in front of us, it's purely an Article III question. Purely an Article III question. And counsel, the HIPAA statute protects the types of information that was disclosed here, right? The HIPAA statute does two things in this case. The HIPAA statute addresses and defines the nature of the relationship between the parties by identifying what type of information is subject to the protected health information definition. And there's no dispute here between the parties that the information that we know that AmeriBand concedes was exposed in the breach qualifies as protected health information. And the other thing HIPAA does is it identifies who has that duty to protect that information. And there's no dispute here that AmeriBand is subject to those duties as well. So that's how the Congress's judgment informs the standing inquiry in this case. So turning to the second injury, which consists of the loss of the time and cost associated with assessing the risk of fraud and plaintiffs taking the time to reduce the material risk of identity fraud are detected once it occurs. Certainly, the prospect that AmeriBand advises the plaintiffs to do in this case, which is to look closely at your health records and to monitor your explanations of benefits and to check all your financial accounts and make sure something doesn't look right. And if it does, let us know. That assumes a significant amount of burden and time, especially understanding what explanations of benefits mean, what sort of providers are providing the kind of services and teasing those out whether this was a legitimate service, a legitimate expense, or if it was not. So the question here is whether the complaint plausibly pleads that the data breach created a credible threat of identity theft, such that plaintiff's expenses and time and money now and in the future are reasonable. At this stage of the litigation, we need to separate the well-plaid factual allegations and defendant's actions in the case from the defendant's characterizations of what happened in the data breach. A few of the objective indications from plaintiff's perspective upon receiving the notification letter is, again, AmeriBand has virtually all of their financial and health-related information and maintains it and transmits it in the course of business. The data breach notification letter specified included not, and it didn't exclude specific pieces of information. There are some data breaches where a data breach notification letter will say, there were no social security numbers exposed in this data breach. This is not that case. And the letter also, in the What You Can Do section, advised the plaintiffs to take the steps that one would take ordinarily if they were exposed to a risk of identity theft. So given all of that, and given the fact that that HIPAA data breach statute itself only requires notice when there's not a low probability of identity theft based on four factors, and those four factors are the nature and the extent of the PHI, the protected information, the identity of who disclosed it and who it was disclosed to, whether the information was actually acquired or viewed, and the extent any risk has been mitigated. So the fact itself that the data breach notification letter was sent to the plaintiffs implies that defendants conducted a risk assessment and could not come to a finding that there was a low probability. If there's no low probability, that suggests a credible threat in this case. And we have to separate those actions, those objective actions, from the defendant's statement in its letter that we have no reason to believe that your data has been misused. Did the letter state that it was sent pursuant to HIPAA or make any statement of that nature? I don't recall that it said that it was. It's clear to me that it was sent pursuant to HIPAA, because there's no dispute that the defendant is subject to HIPAA, and so the data breach notification would have to comply with HIPAA, and they would have to be conducting that risk assessment required under HIPAA and doing that analysis. And there are another of other open questions that are in the defendant's exclusive possession here. Why is it that a claims report was being sent by email in the first place to a member? This is not a legitimate business case. Was this something that an employee was doing on a day-to-day basis? Was this some sort of scam? Was the employee lured into doing this? Because it was highly irregular. I thought that, according to IEC, that one of the members requested information regarding his or her own information, right? And then so that was filtered, but the filter actually wasn't, you know, you can flip it on and off at will. According to Ameriben, it was a spreadsheet that was sent by email. It's an Excel spreadsheet, and it was filtered so that if you immediately open it, all you see is the filtered information. And so the story goes is that it was just filtered out so the individual who requested the information could see their information. But you can easily see from an Excel spreadsheet when that's the case, especially in a file with 70,000 other entries, you'll see line one, and then you'll see line 60,000 or wherever that data was in the file. And you'll know, you can click on the little line in between them, and that will populate everything. My point is that the disclosure may not be as nefarious as you state, right? It could have been entirely inadvertent. But perhaps whether or not it was inadvertent or not, that's not the question before us. The question is just whether there's injury in fact. Certainly, I do think if, and courts do rely on if there's a targeted nature of the data breach or if there's a criminal hack attempt, that's a factor weighing in favor of a credible threat. I don't think it's required. Certainly, in a case where we have highly valuable information like we have here, we have a large amount of it, and we have an opportunity for a potential for a crime of where the recipient of the file who now has this highly valuable information can decide, look what just fell in my lap, now I can go make use of it in nefarious ways. That's potential. We don't know who this individual is who received the email. There are also ways we can find out whether the individual who received the email was subject to other data breaches, and another hacker has the authorization to access their emails. And so, it's an indirect access by a hacker of the file itself. Counselor, I see you've cut into your rebuttal time. Would you like to save the remainder? Certainly. Thank you, Your Honor. Thank you. Good morning, Your Honors. May it please the court. Darren Craig for IEC Group, which does business as a Maribyn. The district court properly dismissed plaintiff's amended complaint for lack of standing because plaintiffs failed to plead adequately a concrete injury. Under this court's holding in Greenstein v. Nobler Reciprocal Exchange, whether a concrete injury results from possible disclosure of personal information depends on three factors. First, the nature of the information disclosed. Second, the context of the disclosure. And third, the alleged injuries associated with the disclosure. Here, the district judge properly concluded that all three of those factors cut against a finding that there was an adequate allegation of injury. The alleged data breach did not involve sensitive information such as Social Security numbers, dates of birth, or payment card numbers as are present in other cases. Second, the breach occurred inadvertently and not through the actions of hackers or other cyber criminals. And third, plaintiffs have not pleaded any actual misuse of their information. And while plaintiffs originally filed their complaint 11 days after receiving the letter from a Maribyn, the case was pending for two years. And in those two years, there was no amended allegations concerning actual misuse. So to give a little factual background about this, IEC Group is a third-party administrator for employer-sponsored health plans. Again, this case doesn't involve an infiltration of its systems, a breakdown of its data security, or other data policies. Instead, one employee sent a spreadsheet to health plan members with information those members had requested. The spreadsheet was filtered so that only the recipient's information was viewable, but a Maribyn later discovered that that filter could be turned off. The other information had not been eliminated. That information, as disclosed in the notification sent to the Blacks and others, included the insured's name, the member employee's name, if that was different from the insured receiving services, a unique tracking number, a claim number, the provider's name, the date of service, and the amount billed or paid. And plaintiffs do not allege that their information has been misused by any unauthorized persons. So, looking at the authorities governing this, this is clearly one where there was limited information disclosed, similar to the Patterson case and the Jackson case, which we cited in our brief, as well as the Greenstein case, which is this Court's precedent. In fact, in Greenstein, there was an allegation, and it was actually included in the notice letter, that driver's license numbers had been included, but the Court affirmed the District Court's dismissal because there was no allegation that the driver's license numbers had actually been accessed. Similarly here, there's no allegation that the spreadsheet's been unfiltered, no allegation that any information's been accessed, and importantly, nothing in that letter includes Social Security numbers or other payment card information, other sensitive information. Second, the context of the disclosure shows a little risk. Again, it's not a hack or an intrusion. It's not a breakdown in security systems. It was an employee's mistake in sending this out in the form he did. But again, you know, many courts have held that in the absence of alleged criminal activity, there's, you know, you don't get to that substantially certain or imminent risk of harm required for Article III standing. – Counsel, so you and the District Court focus on one branch of Article III standing, the credible risk of harm, substantial risk of harm. Counsel, though, argued that there is injury by the very fact of disclosure, and he analogizes to two torts. Did the District Court address that branch of Article III injury? – Well, the District Court analyzed whether this is the type of information that courts have found is so sensitive in itself that the mere disclosure constitutes a harm, and concluded based on the authorities cited in that opinion in our brief, including Patterson and Jackson cases, that this is not the type of information so sensitive that its mere disclosure is offensive. So it has... – Did Patterson and Jackson address HIPAA types of information? – Patterson did. In that case, the data disclosed included name, date, whether plaintiff was an insured or patient, review time on the patient's file, and the total amount to be billed. So in some ways, similar to the types of information here. And, you know, but again, there's no diagnosis code. There's no description of the procedure performed or other types of information that courts have held is so sensitive, you know, in itself that disclosure should be considered injury. – When you say the provider is revealed, at what level is that? Are we talking about, you know, XYZ practice group? Are we talking about Dr. Smith? I mean, what do we mean when we say provider? – We're talking about the provider name. – Now, that's what I'm asking. What is the provider name? Does that mean Dr. Smith? – Yes, Dr. Smith. – So if it's an OBGYN, we know the nature of the practice and we have some general idea of the treatment provided? – There might be some general idea, although even in an OBG practice, there can be a range of treatments. – Of course, that's right. But we do know the name of the doctor then? – That is true, yes. – What if that doctor only performs gender transformation? That's the sole and exclusive description of their practice. – You know, that may be like the assisted reproduction case that plaintiffs cite. There has been no allegation that either of the Blacks medical practitioners have those types of practices. And so I think that would be pure speculation that one could infer medical procedures the Blacks may have received from the disclosure at issue here. And it's certainly not been alleged in the amended complaint. I'll also briefly address mitigation costs. This court held in Greenstein that it's only when the risk of future harm is not speculative can the cost of mitigation efforts form the basis for standing. Similar cases from district courts throughout this circuit have reached the same conclusion. And those go back to the Supreme Court's, I think those go back to the decision that the Supreme Court's holdings that these have to be, you know, substantially certain, imminent. You can't create standing where it doesn't already exist. So, you know, the facts are pretty clear as alleged in the complaint. The plaintiff had an opportunity to amend the district and made immaterial amendments. The district court concluded those amendments were insufficient. And for those reasons and the reasons expressed in our briefs and this morning, we asked that the court affirm the district court's order in all respects.  Counsel, do you deny that you that your client IEC had a duty to keep the information confidential? There was a duty under HIPAA to keep the information confidential. Yes, your honor. Okay. Thank you, counsel. Thank you.  In response to the defendant's citation to Greenstein, that that was an unpublished case. It's not precedent on this panel. It's also vastly different from this case. That case involved a website where you could input basic information using your name and other basic information and obtain a driver's license number that would automatically populate on the website. That's far afield from the kind of information we're talking about in this case, where there's a federal and state statutes that regulate how this information is supposed to be treated and with whom it's supposed to be shared and with whom it's supposed to be disclosed. And those duties were violated. And in this case, not in that case. The the inference can be drawn based on the fact that the defendants provided a data breach notification letter to the plaintiff that there was an objective assessment, that there was not a low probability of identity theft. And that's why the letter was sent. And Greenstein also doesn't deal with a release of sensitive information as the basis of an injury that has a close analog in the common law, like we are raising here. And the same goes with the Patterson case. That case only relied on the credible threat of identity theft. And in that case, the defendant submitted an affidavit that the hacker was paid a ransom and returned the data. So the court found that there was no future risk of identity theft because they no longer had the data. Now, whether the court wants to credit that particular finding, the facts are completely different from what happened here. The information in this case was emailed to unknown people. Defendant knows who they are, potentially. One or more persons is what the data breach notification letter said. It's not clear whether they know how many people it was sent to. It could have been forwarded on to a great many people. It could have been accessed by a great many people. But it's never going to come back and return to the plaintiffs and be secure ever again. So the plaintiffs allege emotional distress because there's a potential here that other plan members who could be plaintiff's colleagues, could be plaintiff's subordinates, could be their supervisors, potentially know health-related information about them that ought to be kept private. That is an injury that this court should recognize as an Article III injury, in fact. And this court should make clear that a defendant in a data breach lawsuit does not hold the keys to the courthouse door by curating favorable facts in this notification letter. Actions speak louder than words. And here, Amiraben's actions and the plaintiffs' well-play allegations in the complaint support plaintiffs' standing at the pleading stage. Plaintiffs ask that the court reverse the trial court and remand for further proceedings. Thank you. Thank you, counsel. The case is submitted. All rise. Hear ye, hear ye. All persons having had business with the Honorable United States Court of Appeals for the Ninth Circuit will now depart. For this court, for this session, now stands adjourned.
judges: HAWKINS, FLETCHER, TUNG